IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENDA L. VANDYKE,

        Plaintiff,                      No. CIV.S. 07-1877 FCD GGH PS

    vs.

NORTHERN LEASING SYSTEM, INC., et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Previously pending on this court's law and motion calendar for September 24, 2009, was defendant Northern Leasing Systems, Inc.'s ("NLS") motion to dismiss.[1] Plaintiff appeared in pro se. Jonathon Ayers appeared for NLS. For the reasons stated in this opinion, the court recommends that NLS' motion to dismiss be granted in part and denied in part.

BACKGROUND

        This action was commenced on September 11, 2007. The amended complaint, filed December 17, 2007, alleges that plaintiff entered into a lease agreement with defendant NLS for Virtual Terminal Software in May, 1999, and the agreement was cancelled in June, 1999 due to "poor services." Plaintiff states that she never received any bills, but on July 18, 2007, she

---

[1] Defendant Cohen was terminated on December 17, 2007, and defendant NLS is the only remaining defenant.

1

received a phone call from defendant's collection department, threatening to pull her credit report 100 times every 6 months and to take her to court. Plaintiff claims that the statute of limitations on collecting a debt is six years and that defendant has violated the "Unfair Debt Collection Practices Act," "Unfair Business Practice Act," and the Fair Credit Reporting Act, through its attempt to collect the debt by fraud and its agreement which was never legitimate. Plaintiff alleges emotional distress, anxiety and panic attacks as a result of defendant's actions. Plaintiff seeks $300,000 in compensatory damages, $1,000 in statutory damages for each violation, and for defendant to leave plaintiff and her "credit report alone for life." (Dkt. #7.)

DISCUSSION

    I.  FAILURE TO STATE A CLAIM (12(b)(6)

        A.  Legal Standard for Motion to Dismiss

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421,

89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

B.  Analysis

1.  Federal Debt Collections Practices Act (15 U.S.C. § 1692)

NLS first argues that under the Federal Debt Collections Practices Act ("FDCPA"), it is not a debt collector, and the subject of the dispute is not a debt as defined in the FDCPA.  Plaintiff's opposition does not address this claim.

In 1977 Congress enacted the Fair Debt Collection Practices Act (FDCPA) in response to national concern over "the use of abusive, deceptive and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a).  The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."  S. Rep. No. 382, 95th

Cong., 1st Sess. 1-2, reprinted in 1977 U.S. Code Cong & Ad. News 1695, 1696.

> The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes ..." 15 U.S.C. § 1692a(5); see also Bloom v. I.C. Sys. Inc., 972 F.2d 1067, 1068-69 (9th Cir.1992) (explaining that the FDCPA applies to debts incurred for personal rather than commercial reasons). The Act defines "consumer" as "any natural person obligated ... to pay any debt." Id. § 1692a(3). The Act does not define "transaction," but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach "to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir.1997) (citing Shorts v. Palmer, 155 F.R.D. 172, 175-76 (S.D.Ohio 1994).

Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004).

Under the FDCPA, a "debt collector" "means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). With some exceptions,[2] the term also includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. Finally, "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." Id.

\\\\\

---

[2] Excepted is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C.A. § 1692a(6)(F).

1          Defendant is correct in that the FDCPA does not apply to companies collecting their own debts, but only to companies which collect debts owed to third parties. The amended complaint concedes that the collection department for NLS called her, was verbally abusive to her, and threatened to take her to court and pull her credit report "100 time every 6 months, when ever he wants." (Am. Compl. at 1.) Therefore, NLS was attempting to collect its own debt and was not a debt collector.

         The amended complaint also concedes that plaintiff contracted with defendant to lease "virtual terminal software." (Id.) Although plaintiff does not specifically allege that this software was to use in her business, she does allege that defendant specialized in leasing and sales of various products to "small businesses." (Id.) The parties do not dispute that the product was for use in plaintiff's business. Therefore, the transaction was not primarily for personal, family, or household purposes and does not qualify as a consumer debt under the FDCPA. As plaintiff has already had the opportunity to amend her complaint, she will not be permitted further leave to amend this claim.

## 2. Fair Credit Reporting Act (15 U.S.C. § 1681)

         NLS argues that the Fair Credit Reporting Act ("FCRA") is aimed at the provider of the credit report, and since NLS did not furnish a credit report, but rather received one, this Act does not apply. Furthermore, NLS contends, a consumer report under this act is to be used for personal, family or household purposes, which are not applicable here. Finally, NLS asserts that under the lease agreement, plaintiff gave express permission for NLS to obtain a credit report.

         Plaintiff's oppositions state that she did not agree to give her credit away for the defendant to unlawfully access her credit report throughout her life whenever it wants, by using [her] old signature from 1999 in the state of Arizona.

         The purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Federal courts have jurisdiction to hear claims under the FCRA; however, a complaint must allege that credit reporting agencies or users of information willfully or negligently violated the Act. 15 U.S.C. §§ 1681n, 1681o, 1681p; Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985). To state a claim for a willful noncompliance with the FCRA under 15 U.S.C. §§ 1681b(f) and 1681n,[3] the complaint must allege that defendant obtained a "consumer report" from a "consumer reporting agency" under the FCRA, that the defendant obtained plaintiff's credit reports under false pretenses or knowingly without a permissible purpose, and that the defendant acted willfully when it requested the report. Myers v. Bennett Law Offices, 238 F.Supp.2d 1196, 1201 (D. Nev. 2002); 15 U.S.C. § 1681n.

"In similar terms, § 1681o establishes comparable liability for negligent non-compliance. That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement 'imposed with respect to any consumer.'" Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002).

Plaintiff must allege causation and damages for violations of the FCRA. Gorman v. Wolpoff & Abramson, LLP, 552 F.3d 1008, 1032-33 (9th Cir. 2009). Acceptable evidence includes a showing that plaintiff was refused credit or offered higher interest rates as a result of delinquencies in her credit report, or that she lost wages due to time spent in dealing with credit problems caused by defendant. Id. Emotional distress has also been held to constitute actual damages in this type of case. Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008).

Section 1681b(a)(3)(A) provides a proper purpose for obtaining a consumer report, that it may be obtained by a person who "intends to use the information in connection

---

[3] Plaintiff refers only to § 1681b in her amended complaint; however, this section overlaps with § 1681n.

with a credit transaction involving the consumer on whom the information is to be furnished…."

> First, if the information was used or expected to be used to assess an individual's eligibility for personal credit, insurance, or employment, then the information constitutes a "consumer report," and is governed by FCRA. See Ippolito, 864 F.2d at 449. Reports issued for commercial, business or professional purposes are outside the scope of the Act. See id. at 452; D'Angelo v. Wilmington Medical Center, Inc., 515 F.Supp. 1250, 1253 (D.Del.1981). FCRA is designed to protect consumers only in their individual capacities. For example, where a corporate plaintiff applies for credit for a commercial purpose, the plaintiff is not a member of the class the Act was intended to benefit. See Ippolito, 864 F.2d at 450. Accordingly, section 1681e(a) requires the user to "certify the purposes for which the information sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a).

Zeller v. Samia, 758 F. Supp. 775, 780 (D. Mass. 1991). A report about a consumer pertaining to credit in connection with a business operated by that consumer is not a consumer report. Therefore, the FCRA does not apply to it. Lucchesi v. Experian Information Solutions, Inc., 226 F.R.D. 172, 174 (S.D.N.Y. 2005), *quoting* 16 C.F.R., Part 600, App. cmt. 6(b).

The complaint alleges that defendant violated 15 U.S.C. § 1681b because it "had no permissible purposes to access [plaintiff's] credit report on April 10[th], 13th, July 17, 18[th] with Experian, April 13th July 17th of 2007 with TransUnion after the Statute of Limitation has expired. In addition, Northern Leasing System who knowingly and willfully obtains [plaintiff's] report under false pretenses." [Sic] (Am. Compl. at 1-2.)

NLS first argues that § 1681b "is directed at the provider of the credit report, not the person who obtains it." As the authority outlined above explains, the FCRA is directed to both credit reporting agencies and users of consumer reports. Therefore, NLS is still subject to the Act, despite being a receiver of the report.

Next, NLS contends that the credit report at issue was not a consumer report because it was obtained in connection with a commercial business transaction between plaintiff's business and NLS. It is true that consumer reports related to business transactions do not qualify as consumer reports. Nevertheless, plaintiff alleges that NLS accessed her credit report six times

7

in 2007, years after the parties' business transactions ended. Plaintiff's opposition states that she did not give permission for defendant to unlawfully access her credit report throughout her life whenever it wants, by using her old signature from 1999. (Oppo. at 4.) Such conduct, if true, would be outside the parties' business relationship and outside the terms of the contract. Furthermore, at hearing defendant indicated that plaintiff was a guarantor for her business in the contract with defendant. Therefore, her personal credit could be affected by the alleged actions of defendant. Although the initial permission to obtain a credit report as set forth in the contract concerned commercial credit only, the allegations in the complaint do not pertain to the contract at all.

Based on this interpretation of the claims, which sound in tort rather than contract, NLS' final argument that by signing the contract, plaintiff expressly gave permission to obtain her credit report, fails.[4] It is not disputed that the contract between plaintiff and defendant was previously terminated based on some breach. Therefore, plaintiff's claim based on the FCRA that defendant repeatedly acted to obtain her credit report after termination of the contract, survives a motion to dismiss.[5]

II. IMPROPER VENUE (12(b)(3), 28 U.S.C. § 1404)

Defendant argues the action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3), based on the forum selection clause in the contract which designates New York as the location for the institution of actions, or in the alternative, to transfer under 28 U.S.C. § 1404. Defendant points out that forum selection clauses are presumed valid, but analyzes the factors to determine whether a forum selection clause is unreasonable.

\\\\\

---

[4] In support, NLS refers to the Cohen declaration filed in conjunction with defendant's prior motion to dismiss and set aside default. (Dkt. #33.) This court will not consider extrinsic evidence. Fed. R. Civ. P. 12(d).

[5] NLS has not moved to dismiss plaintiff's claim under California's Unfair Business Practices Act; therefore, the court will not rule on it.

> A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, Carnival Cruise Lines, 499 U.S. at 591, 111 S.Ct. at 1526; Bremen, 407 U.S. at 12-13, 92 S.Ct. at 1914; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," Bremen, 407 U.S. at 18, 92 S.Ct. at 1917; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. Id. at 15, 92 S.Ct. at 1916.

Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996). In resolving a motion under Rule 12(b)(3) based on a forum selection clause, all reasonable inferences must be drawn in favor of the non-moving party and all factual conflicts must also be resolved in favor of the non-moving party. Murphy v. Schneider National, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

As the only viable claim remaining is under the FCRA and the allegations do not relate to the prior contract between the parties, the forum selection clause is irrelevant.

NLS urges the court in the alternative to transfer due to improper venue. The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). [6]

In this case, although NLS resides in NewYork, a substantial part of the acts giving rise to the FCRA claim appear to have occurred in Stockton, where plaintiff resides. Therefore, venue is appropriate in this district.

\\\\\

\\\\\

---

[6] Although plaintiff previously requested transfer to New York, she has withdrawn that request, and her current position is to maintain venue in California. (Oppo. at 3.)

CONCLUSION

Accordingly, IT IS RECOMMENDED that the motion to dismiss by defendant NLS, filed August 12, 2009, be granted in part and denied in part, and defendant be directed to file an answer to claims under the FCRA and California's Unfair Business Practice Act within thirty days of an order adopting these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/14/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH/076/VanDyke1877.mtd.wpd